**The below described is SIGNED.**



**Dated: September 30, 2014** _____
R. KIMBALL MOSIER
U.S. Bankruptcy Judge



IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>Twin Peaks Financial Services, Inc., *aka* Kenneth C. Tebbs, *aka* MNK Investments, Inc., and MNK Investments,<br><br>Debtor. | Bankruptcy Case Number:<br><br>07-25399<br>07-25401<br>(Substantively Consolidated as 07-25399)<br><br>Chapter 7<br><br>Judge R. Kimball Mosier |
| Duane H. Gillman, as Chapter 7 Trustee,<br><br>                 Plaintiff,<br>v.<br><br>Christopher Russell *aka* Chris Russell, an individual,<br><br>                 Defendant. | Adversary Number: 09-02687 |

**MEMORANDUM DECISION ON TRUSTEE'S MOTION FOR SUMMARY JUDGMENT ON COUNT 2 OF COMPLAINT (AVOIDANCE OF FRAUDULENT TRANSFERS UNDER § 548 AND LIABILITY OF TRANSFEREE UNDER § 550)**

The Trustee's motion for summary judgment came before the Court on January 15, 2014.

Kenneth L. Cannon II and Ian S. Davis of Durham Jones & Pinegar, P.C. appeared on behalf of

Duane H. Gillman, the Chapter 7 Trustee (Trustee). Jerome Romero of Jones, Waldo, Holbrook & McDonough, P.C. appeared on behalf of Christopher Russell, the defendant (Defendant) in this adversary proceeding. On February 20, 2014, the Court entered an Order granting the Trustee's motion for summary judgment with respect to Count 1 of the complaint, which was brought under 11 U.S.C. §§ 547 and 550. After considering the pleadings and argument of counsel, the Court makes the following findings and conclusions with respect to Count 2 of the complaint.

## I. JURISDICTION

The Court's jurisdiction over this adversary proceeding is properly invoked under 28 U.S.C. § 1334(b) and § 157(a) and (b). The Trustee's motion seeks an order of this Court avoiding an alleged fraudulent transfer pursuant to 11 U.S.C. § 548,[1] making this a core proceeding under 28 U.S.C. § 157(b)(2)(H). The Court may enter a final order. Venue is proper under the provisions of 28 U.S.C. § 1409.

## II. PROCEDURAL BACKGROUND

The bankruptcy cases of Twin Peaks Financial Services, Inc. and MNK Investments (collectively "Debtor") were commenced by separate petitions for orders for involuntary relief under chapter 11 of the United States Bankruptcy Code. Orders for relief under chapter 11 were entered, and the cases were substantively consolidated under case no. 07-25399. The

---

[1] All subsequent statutory references are to Title 11 of the United States Code unless otherwise indicated.

consolidated cases were converted to chapter 7, and Duane H. Gillman was appointed trustee. A related case, *In re Kenneth C. Tebbs*, case no. 08-20546, was commenced on February 1, 2008. The related case, *In re Kenneth C. Tebbs*, has not been consolidated into case no. 07-25399.

This Court has already determined in the "Ponzi Proceeding"[2] that the Debtor operated a Ponzi scheme. Although the Debtor's purported business was real estate investment, the Debtor primarily funded operations by cash receipts derived from investment-type loans from third party individuals and business entities. For a time those who invested early were able to recoup their initial investment plus their promised return. Payments to these investors were not made from the profits of legitimate business operations, but were paid using the money of subsequent investors. Like all Ponzi schemes must, the Debtor's scheme collapsed, leaving its Johnny-come-latelies owed millions of dollars. This Court has also determined in the "Insolvency Proceeding"[3] that the Debtor was at all times insolvent and engaged in business for which it had an unreasonably small capital.

On November 25, 2009, the Trustee commenced an adversary proceeding against the Defendant, alleging claims of preference under § 547 (Count 1), fraudulent transfer under § 548 (Count 2), and state law fraudulent transfer under § 544(b) (Count 3). The Trustee's complaint seeks to recover a total judgment against the Defendant in the amount of $441,008.97, which represents the amount the Defendant received in excess of his investment with the Debtor (Transfers).

---

[2] Misc. Adv. Proc. No. 11-8006, Docket No. 56.
[3] Misc. Adv. Proc. No. 11-8005, Docket No. 56.

On May 15, 2013, the Trustee filed a motion for summary judgment with respect to Counts 1 and 2.[4] Although the Defendant filed a memorandum in opposition to the Trustee's motion for summary judgment under Count 1, he did not contest the entry of summary judgment under Count 1 either in the pleadings or in the hearings on the motion for summary judgment. After the Trustee offered evidence in support of his motion under Count 1, the Defendant either did not dispute the Trustee's evidence with contradictory evidence or admitted the evidence, and on February 20, 2014, the Court granted the Trustee's motion for summary judgment under Count 1 of the complaint in the principal amount of $234,590.00.

### III.  UNDISPUTED FACTS

1.  On August 13, 2012, the Court entered findings and conclusions and a judgment in the Insolvency Proceeding, case no. 11-8005.  In doing so, the Court found that the Debtor was insolvent within the meaning of the Bankruptcy Code since the commencement of its operations and was engaged in a business for which it had unreasonably small capital.

2.  On August 13, 2012, the Court entered findings and conclusions in the Ponzi Proceeding, case no. 11-8006.  The Court found that all four characteristics of a Ponzi scheme are present in the Debtor's case: 1) the returns to investors were not financed through the success of the underlying business venture; 2) the returns to investors were taken from newly attracted investments; 3) investors were promised large returns; and 4) initial investors received promised returns, which attracted additional investors.  Accordingly, the Court found that the Debtor operated as a Ponzi scheme.

---

[4]  Because the Trustee's motion did not seek summary judgment on Count 3, the Court will not address the Trustee's § 544(b) fraudulent transfer claim in this decision.

3. Between June 28, 2006 and October 13, 2006, the Debtor received transfers from the Defendant totaling $520,000.00.

4. In return for the $520,000.00 total investment, the Defendant was paid a total of $961,008.97 by the Debtor, thus allowing the Defendant to receive $441,008.97 more than he had invested with the Debtor.

5. On December 2, 2005, the Defendant transferred funds totaling $465,000.00 to Canyon View Title at the direction of Kenneth Tebbs.

6. On December 7, 2005, the Defendant transferred funds totaling $100,000.00 to Canyon View Title at the direction of Kenneth Tebbs.

7. On January 26, 2006, the Defendant transferred funds totaling $148,035.48 to Canyon View Title at the direction of Kenneth Tebbs.  The $148,035.48 was loaned to an individual or entity other than the Debtor.

8. On January 27, 2006, the Defendant transferred funds totaling $151,900.00 to Canyon View Title at the direction of Kenneth Tebbs.

9. On February 2, 2006, the Defendant transferred funds totaling $145,000.00 to Canyon View Title at the direction of Kenneth Tebbs.

10. There is no evidence that the transfers of December 2, 2005, December 7, 2005, January 26, 2006, January 27, 2006, or February 2, 2006, benefitted the Debtor.

11. Kenneth Tebbs is a separate individual and is not the Debtor, nor has the bankruptcy case captioned *In re Kenneth Tebbs,* case no. 08-20546, been substantively consolidated into the Debtor's bankruptcy case.

## IV. ANALYSIS

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.[5] "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit."[6] "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[7] There is no genuine dispute that the Defendant paid $520,000.00 directly to the Debtor and received $961,008.97 directly from the Debtor. If the Court looks exclusively at the Defendant's dealings with the Debtor, the Defendant received $441,008.97 in excess of his investments with the Debtor. The Defendant asserts that the Court should consider all of his transactions with Kenneth Tebbs because the actions were all part of a single fraudulent scheme. The Defendant maintains that he paid a total of $1,725,635.48 to Tebbs's entities and received only $1,216,164.00 and he is therefore a net loser in Tebbs's scheme. The Defendant disputes that the Transfers were made with the subjective intent to hinder, delay, and defraud creditors. The Defendant also asserts that the Debtor was part of Tebbs's fraudulent scheme and that he has a fraud claim against the Debtor that provides a valid defense to the Trustee's fraudulent transfer claim.

**A. The Defendant's Transactions With the Debtor and Kenneth Tebbs Must Be Viewed Separately.**

The Defendant complains that the Trustee and his expert have isolated and compared only the funds that went into the Twin Peaks bank account while ignoring that Tebbs's Ponzi

---

[5] Fed. R. Civ. P. 56(a), made applicable in adversary proceedings by Fed. R. Bankr. P. 7056.
[6] *Adamson v. Multi Cmty. Diversified Servs., Inc.,* 514 F.3d 1136, 1145 (10th Cir. 2008).
[7] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986).

scheme was much broader in scope. The Defendant argues that his investment of $1,725,635.48 with Tebbs should be viewed as his investment or "undertaking" for purposes of § 548. The Trustee has not disputed that Tebbs's fraudulent scheme may have extended beyond the Debtor's business operations, and the Court will accept the Defendant's assertion as an undisputed fact. However, the fact that Tebbs's fraudulent scheme may have extended beyond the Debtor's business operations does not automatically permit this Court to ignore Tebbs's and the Debtor's separateness.

"[S]ubstantive consolidation merges the assets and liabilities of the debtor entities into a unitary debtor estate."[8] A question central to the appropriateness of substantive consolidation is whether the economic prejudice of continued debtor separateness outweighs the economic prejudice of consolidation.[9] Tebbs's bankruptcy and the Debtor's bankruptcy have been pending for more than six years. The cases have not been substantively consolidated, and it would be inappropriate for this Court to ignore the separateness of these two debtors. The situation is akin to two individuals perpetuating a fraudulent scheme. Unless the cases of the two debtors are substantively consolidated, payments made to one debtor cannot also be deemed to be payments made to the other debtor. After a careful weighing of the prejudice and benefits to all creditors, the Court must observe the separateness of the Debtor and Tebbs.

**B. Fraudulent Transfer Law and the Ponzi Presumption.**

The Defendant did not contest the Ponzi Proceeding and he concedes that the Trustee has established that the Debtor was operating a Ponzi scheme. Once the Court has determined that

---

[8] *Woburn Associates v. Kahn (In re Hemingway Transp., Inc.)*, 954 F.2d 1, 11-12 (1st Cir. 1992).
[9] *See Reider v. FDIC (In re Reider)*, 31 F.3d 1102, 1106-1107 (11th Cir. 1994).

the Debtor was operating a Ponzi scheme, the "Ponzi presumption" arises. Once the Ponzi presumption is established, the requisite intent to defraud is presumed, and the burden of establishing a statutory defense shifts to the transferee.[10] The Ponzi presumption provides that "'[t]he mere existence of a Ponzi scheme is sufficient to establish actual intent to defraud.'"[11] "One can infer an intent to defraud future undertakers from the mere fact that a debtor was running a Ponzi scheme. Indeed, no other reasonable inference is possible."[12]

## C. The Defendant's Alleged Fraud Claim Does Not Constitute "Value" for Purposes of § 548.

The Defendant asserts that he has a fraud claim, which gives him a legally enforceable claim. For purposes of evaluating the Defendant's assertion with respect to his claim for fraud, the Court will assume that the Defendant has a claim for fraud against the Debtor in the amount of $1,725,635.48, the full amount the Defendant alleges. The Court is making this assumption for purposes of this motion only, accepting the proposition that a party may have a claim against all parties participating in a fraud for all of the party's damages, even though a participant in the fraud may not have received property as a result of the fraud. Although the Defendant's briefs do not go into great detail, the Court concludes that the Defendant contends that his alleged fraud claim constitutes "value" for purposes of § 548 that was given in exchange for the Transfers.

A trustee may avoid a transfer under § 548(a)(1)(B) if the debtor received less than a reasonably equivalent value in exchange for the transfer. Additionally, under § 548(c), a

---

[10] *SEC v. Mgmt. Solutions, Inc.*, No. 2:11-CV-1165-BSJ, 2013 WL 4501088, at *6 (D. Utah Aug. 22, 2013).
[11]*Id*. (quoting *Donell v. Kowell*, 533 F.3d 762, 770 (9th Cir. 2008).
[12] *Merrill v. Abbott (In re Indep. Clearing House Co.)*, 77 B.R. 843, 860 (D. Utah 1987).

transferee may retain any interest transferred to the extent the transferee gave value to the debtor in exchange for the interest transferred.  In order to defend against the Trustee's § 548(a)(1)(B) claim, or avail himself of the protection of § 548(c), the Defendant must have given value in exchange for the Transfers he received.  The parties do not dispute that the Defendant gave value in the amount of his investment or "undertaking" with the Debtor.  The legal dispute is whether the Defendant gave value for the $441,008.97 that he received in excess of his investment.

Section 548(d)(2)(A) defines "value," for purposes of § 548, as "property, or satisfaction . . . of a present or antecedent debt of the debtor . . . ."  The "property" the Defendant gave—his investment—has already been taken into account, and the Defendant gave the Debtor no other "property" in exchange for the Transfers.  Therefore, the only value the Defendant can assert that he gave in exchange for the Transfers is the satisfaction of a present or antecedent debt—presumably his alleged fraud claim.  The Court must therefore determine whether the Defendant's alleged fraud claim constitutes value for purposes of § 548 and whether it was given in exchange for the Transfers.

Given the undisputed facts of the case, the Transfers were not given in exchange for satisfaction of the Defendant's alleged fraud claim.  On the date of the Transfers, the Defendant had not asserted a fraud claim.  The Transfers were made pursuant to certain investment contracts promoted by the Debtor (Investment Contracts).  There was no other reason for the Transfers, and the Defendant cannot now argue that the Transfers were made in exchange for satisfaction of his alleged fraud claim.

**D. The Transfers May Be Avoided Under § 548.**

The Trustee may avoid the Transfers under § 548(a)(1)(A) or (B).

**1. The Trustee Has Established the Elements of § 548(a)(1)(A).**

To avoid a fraudulent transfer under 11 U.S.C. § 548(a)(1)(A), the Trustee must demonstrate: (1) that the Debtor transferred to the Defendant an interest of the Debtor in property within the two years prior to the petition date, and (2) that the Debtor made such transfer with actual intent to hinder, delay, or defraud other creditors of the Debtor. The first element has been established by the undisputed facts. The second element is established as a matter of law by the Ponzi Proceeding and the Ponzi presumption arising from the order in that proceeding.

**2. The Trustee Has Established the Elements of § 548(a)(1)(B).**

The Defendant did not directly address the Trustee's § 548(a)(1)(B) claim, but the Court assumes that the Defendant does not concede that the Trustee has established the elements of this claim. The Trustee may establish his claim under § 548(a)(1)(B) if he proves: (1) that the Debtor transferred to the Defendant an interest of the Debtor in property within two years of the petition date, and (2) the Debtor received less than a reasonably equivalent value in exchange for such transfer, and either (a) the Debtor was insolvent on the date that the transfer was made, or (b) the Debtor was engaged in business for which any property remaining with the Debtor was an unreasonably small capital. It is undisputed that the Transfers were property of the Debtor, made within two years of the petition date, and that the Debtor was insolvent when the Transfers were made. As discussed above, the Defendant's potential fraud claim did not constitute value given

in exchange for the Transfers, and the Defendant gave no other value in excess of his undertaking. The Trustee has therefore established his § 548(a)(1)(B) claim.

### 3. The Defendant Cannot Retain the Transfers Under § 548(c).

Section 548(c) provides:

> Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation.

Pursuant to this statutory provision, if the payments to the Defendant were fraudulent conveyances, the Defendant is protected to the extent he took for "value" and in "good faith." The *Independent Clearing House* court made clear that in Ponzi scheme cases, only the amount of a defendant's undertaking constitutes "value," and credit cannot also be given for amounts in excess of that undertaking.[13] "To allow an undertaker to enforce his contract to recover promised returns in excess of his undertaking would be to further the debtors' fraudulent scheme at the expense of other undertakers."[14] For that reason, the court in *Independent Clearing House* looked beyond the terms of the contract to the underlying facts to determine whether the contract was unenforceable on public policy grounds.[15] Looking at the underlying facts, the court found that "any money that a defendant might recover in excess of his undertaking in an action on the contract could not come from the debtors but would have to come from money that rightfully belonged to other, defrauded undertakers."[16]

---

[13] *In re Indep. Clearing House Co.*, 77 B.R. at 861; *see also Sender v. Buchanan (In re Hedged-Investments Assocs., Inc.),* 84 F.3d 1286, 1290 (10th Cir. 1996).
[14] *In re Indep. Clearing House Co.*, 77 B.R. at 858.
[15] *Id.* (citation omitted).
[16] *Id.*

As previously discussed, Defendant's alleged fraud claim was not value within the meaning of § 548, and the Transfers were not made in exchange for the Defendant's potential fraud claim but were made pursuant to the Investment Contracts. As with the contract claims in *Hedged-Investments* and *Independent Clearing House*, to allow the Defendant to retain his avoidable fictitious Ponzi scheme profits by asserting they were in payment of his fraud claim would frustrate the purpose of the fraudulent transfer statute, and would allow the Defendant to profit "at the expense of those who entered the scheme late and received little or nothing."[17]

### E. The Transfers May Be Recovered Under § 550.

The Trustee seeks to recover the Transfers or their value pursuant to § 550(a). The Trustee bears the burden of proving that the Transfers were transferred to the Defendant as the initial transferee. The Trustee has met this burden by showing there is no genuine dispute that the Transfers were transferred to the Defendant as the initial transferee. Therefore, the Defendant is liable to the Trustee for the value of the Transfers under § 550.

### V. CONCLUSION

The Trustee has established his claims under § 548(a)(1)(A) and (B). The Defendant's attempted distinction between the contract claims and the Defendant's potential fraud claim is not meaningful. The Defendant's potential fraud claim does not constitute "value" as defined under § 548(d)(2)(A), and the Transfers were not given in satisfaction of the Defendant's

---

[17] *Id.* at 870.

potential fraud claim. Therefore, the Court will grant the Trustee's motion for summary judgment with respect to Count 2 of the Trustee's complaint.

----------------------------------------End of Document---------------------------------------------------

_____ooo0ooo_____

## DESIGNATION OF PARTIES TO BE SERVED

Service of the foregoing Memorandum Decision shall be served to the parties and in the manner designated below:

**By Electronic Service:** I certify that the parties of record in this case as identified below, are registered CM/ECF users and will be served notice of entry of the foregoing Order through the CM/ECF system:

| | |
|---|---|
| Kenneth L. Cannon | kcannon@djplaw.com, khughes@djplaw.com |
| Burton G Davis | bdavis@djplaw.com |
| Ian Davis | idavis@djplaw.com |
| Penrod W. Keith | pkeith@djplaw.com, khughes@djplaw.com |
| Jessica G Peterson | jpeterson@djplaw.com, khughes@djplaw.com |
| Vincent C. Rampton | vrampton@joneswaldo.com, jmonet@joneswaldo.com |
| Jerome Romero | jromero@joneswaldo.com, bparry@joneswaldo.com |
| Jeffrey Weston Shields | jshields@joneswaldo.com, jpollard@swlaw.com; docket_slc@swlaw.com |
| Michael F. Thomson | thomson.michael@dorsey.com, montoya.michelle@dorsey.com |